# SUPREME COURT OF THE UNITED STATES

———

No. 20A72

———

## TIMOTHY K. MOORE, ET AL. *v.* DAMON CIRCOSTA, CHAIR, STATE BOARD OF ELECTIONS, ET AL.

ON APPLICATION FOR INJUNCTIVE RELIEF

[October 28, 2020]

The application for injunctive relief presented to THE CHIEF JUSTICE and by him referred to the Court is denied. JUSTICE BARRETT took no part in the consideration or decision of this application.

JUSTICE THOMAS would grant the application.

JUSTICE GORSUCH, with whom JUSTICE ALITO joins, dissenting from denial of application for injunctive relief.

This summer, the General Assembly of North Carolina adopted new election laws expressly designed to address the challenges COVID posed to a fast-approaching election. Among other things, the General Assembly reduced the witness requirement for absentee ballots from two witnesses to one, N. C. Sess. Laws 2020–17 §1.(a); freed up more individuals to staff polling centers, §1.(b); created a mechanism to allow voters to track their ballots, §3.(a); enabled voters to request absentee ballots online, §7.(a); and increased funding to ensure the State's in-person and absentee voting infrastructure could withstand "the coronavirus pandemic," §11.1(a)–(f). At the same time, the General Assembly judged it appropriate to retain certain other existing election rules, like the State's deadline for the receipt of absentee ballots. Accordingly, under state law, absentee ballots must be postmarked on or before election day, and they must be received "not later than three days after" election

day.  N. C. Gen. Stat. Ann. §163–231(b)(2)b (2019).

Despite the General Assembly's considered judgment about the appropriate response to COVID, other state actors—including the State Board of Elections—recently chose to issue their own additional and supplemental set of amendments to state election laws.  Relevant here, they purported to extend the absentee ballot receipt deadline by six days, up to November 12.

That last part should sound familiar.  Just days ago, this Court rejected a similar effort to rewrite a state legislature's election deadlines.  Wisconsin (like North Carolina) has a ballot receipt deadline enshrined in statute.  All the same, a federal district court decided to order Wisconsin to extend its deadline by six days.  The Seventh Circuit stayed that ruling, and we agreed with its disposition.  For many of the same reasons I believe that decision was correct, I believe we should stay the Board's action here.  See *Democratic National Committee* v. *Wisconsin State Legislature*, 592 U. S. ___, ___ (2020) (Gorsuch, J., concurring).   In some respects, this case may be even more egregious, given that a state court and the Board worked together to override a carefully tailored legislative response to COVID.  Indeed, the president *pro tempore* of the North Carolina Senate and the speaker of its House of Representatives have intervened on behalf of the General Assembly to oppose revisions to its work.

The parties before us all acknowledge that, under the Federal Constitution, only the state "Legislature" and "Congress" may prescribe "[t]he Times, Places and Manner of holding Elections." Art. I, §4, cl. 1.  Everyone agrees, too, that the North Carolina Constitution expressly vests all legislative power in the General Assembly, not the Board or anyone else.  N. C. Const., Art. II, §1; cf. N. C. Const., Art. I, §6.  So we need not go rifling through state law to understand the Board's permissible role in (re)writing election laws.  All we need to know about its authority to override

state election laws is plain from the Federal and State Constitutions.

Besides, even assuming the North Carolina General Assembly could delegate its Elections Clause authority to other officials, its representatives contend before us that it has not authorized the deadline extension here, and understandably so. State law provides the Board with supervisory authority over elections. N. C. Gen. Stat. Ann. §163–22(a). But that authority permits the Board to prescribe regulations only if "they do not conflict" with state statutory law. *Ibid.* State law also furnishes the Board with power to fashion interim rules. §163–22.2. But that power too is circumscribed, triggered when a state statute has been (or likely would be) invalidated by a court. That doesn't sound like a blank check to the Board allowing it to rewrite the election code in any and all consent decrees it may wish to enter. Finally, state law confers upon the Board certain emergency powers. §163–27.1. But, relevant for our purposes, the Board may exercise those powers only when three conditions are met: (1) "the normal schedule for the election is disrupted" (2) by a "natural disaster" and (3) provided that the Board's actions do not "unnecessar[ily] conflict" with statutory law. *Ibid.* There is no ground for thinking that the election "schedule" has been "disrupted": North Carolina stands fully equipped to conduct its election on November 3. Nor is COVID like the "natural disasters" the Board has pointed to in the past (*e.g.*, hurricanes or power outages) that can disrupt the mechanics of running an election, especially given that the General Assembly has long known about the pandemic's challenges and expressly prepared for them. Finally, the change the Board adopted was deemed "unnecessary" by the General Assembly when it *retained* the statutory ballot receipt deadline after considering COVID's impact on election processes. Any single one of these three problems is enough to sink the Board's action.

In the Fourth Circuit, Judges Wilkinson, Agee, and Niemeyer thoughtfully explained the Board's constitutional overreach and the broader problems with last-minute election-law-writing-by-lawsuit.  As they observed, efforts like these not only offend the Elections Clause's textual commitment of responsibility for election lawmaking to state and federal legislators, they do damage to faith in the written Constitution as law, to the power of the people to oversee their own government, and to the authority of legislatures.  Such last-minute changes by largely unaccountable bodies, too, invite confusion, risk altering election outcomes, and in the process threaten voter confidence in the results.  *Wise* v. *Circosta*, ___ F. 3d ___, ___ (CA4 2020) (en banc) (Wilkinson and Agee, joined by Niemeyer, JJ., dissenting).  Respectfully, for all these reasons I would grant the application to stay the Board's action.